## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**J&J SPORTS PRODUCTIONS, INC.**

                                **CIVIL ACTION**

**VERSUS**

                                **NO. 16-568-JWD-RLB**

**TIENDA y TAQUEIRIA "LA FRONTERA," LLC d/b/a TIENDA y TAQUEIRIA "LA FRONTERA," ET AL.**

## RULING AND ORDER

This matter comes before the Court on the *Motion to Dismiss Pursuant to Rule 12(b)(6)* (Doc. 25) filed by Defendants La Frontera, and the owners and members of La Frontera, Erika Sibley and Todd Sibley (collectively, "La Frontera"). Plaintiff J&J Sports Productions, Inc. ("J&J") opposes the motion. (Doc. 27.) Also before the Court is Third Party Defendant, Cox Communications Louisiana LLC's ("Cox") *Motion to Dismiss Pursuant to Rule 12(b)(6)*. (Doc. 14). Defendant La Frontera and Plaintiff J&J have filed separate oppositions to this motion. (Docs. 24, 20.) Cox has filed a reply addressing both oppositions. (Doc. 29.) Oral argument is not necessary. For the following reasons, Defendant La Frontera's motion is **DENIED IN PART** and **GRANTED IN PART**, subject to it amending its motion to dismiss as allowed by the Court, and Third Party Defendant Cox's motion to dismiss is **GRANTED**.

### I.  Relevant Factual Background

This suit arises out of the public broadcast of "The Fight of the Century" Floyd Mayweather, Jr. versus Manny Pacquiao Championship Fight Program ("the Program") that aired on May 2, 2015. (Doc. 1 at 9.) Plaintiff J&J, a distributor of closed circuit pay-per-view[1]

---

[1] J&J contends that pay-per-view means that in order for a customer to view the closed circuit event, the customer must pay a fee to J&J, which is set by J&J. (*Id.* at 5.)

boxing and special events in the United States, asserts it was granted exclusive nationwide commercial distribution and broadcast (closed-circuit) rights to the Program. (*Id.* at 5, 9.) J&J further asserts it entered into subsequent sub-licensing agreements with various commercial entities, including Louisiana entities, by which it granted these entities sub-licensing rights, specifically the rights to publicly exhibit, broadcast and/or publish the Program within their respective establishments. (*Id.* at 9-10.)

Defendant La Frontera is a business that holds a license to sell alcoholic beverages and operates a bar within East Baton Rouge Parish, Louisiana. (*Id.* at 3.) La Frontera advertised that it was broadcasting the Program, and subsequently did so, allowing for the Program to be publicly broadcasted to its customers during business hours on May 2, 2015. (*Id.* at 8.) J&J did not grant La Frontera sub-licensing rights or any other rights concerning the Program. (*Id.* at 10.) Accordingly, J&J initiated this lawsuit against La Frontera and its owners Erika Sibley and Todd Sibley, alleging that La Frontera took steps to unlawfully receive J&J's television signal of the Program and asserting violations of 47 U.S.C. § 553 and 605, as well 18 U.S.C. § 2511 in connection with §2520. (*Id.* at 9-14.)

In its answer, La Frontera conceded that it aired the Program, but denied that its reception and broadcast of the Program was unlawful, further claiming that it legally obtained rights from Cox to air the Program. (Doc. 7 at 2.) Additionally, La Frontera filed a third party demand against Cox, claiming that all actions taken by it were done at the direction of Cox and that it paid Cox to legally air the Program. (*Id.* at 7.) La Frontera alleges Cox did not own the Program, so it did not have the right to sell the Program to La Frontera. (*Id*.) Accordingly, La Frontera brings a third party demand for damages in its favor against Cox under the legal theories of breach of contract, fraud, negligence and Louisiana's Unfair Trade Practice Act (LUTPA). (*Id.* at

7—8.) Additionally, La Frontera seeks indemnification from Cox, should this Court find it liable for claims brought by J&J in the original demand. (*Id*. at 8—9.)

## II.    Standard

### A.    Rule 12(b)(6) Standard

In *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014), the Supreme Court explained "Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." 135 S. Ct. at 346-47 (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds

upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

The Fifth Circuit further explained that all well-pleaded facts must be taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted. *Id.* at 503.

**B.  Documents that may be relied on by the Court when considering Motions to Dismiss Pursuant to 12(b)(6)**

As an initial matter, the Court must determine what documents can be relied upon when considering both of the 12(b)(6) motions before it.[2] Generally, a district court must limit itself to the contents of the pleadings, including attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). "'If, on a motion under 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.'" *Dix v. Louisiana Health Servs. & Indem. Co.*, 12-319, 2013 WL 5350829, at *1 (M.D. La. Sept. 23, 2013) (citing Fed. R. Civ. P. 12 (d).)

Notwithstanding the general rule, the Middle District has utilized a three prong test to determine which documents outside of the complaint may be considered by the Court when considering a motion to dismiss for failure to state a claim. "A court may consider documents

---

[2] La Frontera attached to its Answer an Exhibit critical to this case -which includes its Cox bill from May 2015, showing the pay-per-view charge for the Program, and its Commercial Services Agreement with Cox- but failed attach the Exhibit to its Motion to Dismiss. (Docs. 7-1 and 14).

outside the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiffs' claims." *Dix*, 2013 WL 5350829 at *2.[3]

## III.    Discussion

### A.  La Frontera's Motion to Dismiss (Doc. 25)

#### 1.    Parties Arguments

J&J brings claims against La Frontera and its owners Erika Sibley and Todd Sibley under: (1) 47 U.S.C. § 605, which prohibits interception and publishing radio communication; (2) 47 U.S.C. § 553, which prohibits interception or reception of any communications service offered over a cable system; and (3) 18 U.S.C. § 2511, the Wiretap Act, which prohibits intentional interception of any wire, oral, or electronic communication, in conjunction with § 2520, which creates a private right of action for violations of the Wiretap Act. (*Id*. at 9-14.)

#### i.  La Frontera's Argument in Support of its Motion to Dismiss

La Frontera moves to dismiss all claims brought against it by Plaintiff J&J. (Doc. 25.) However, the supporting memorandum only addresses two of three claims brought against it. (Doc. 25-1.) La Frontera fails to address the claim made against it under 18 U.S.C. § 2511 and 2520. (*Id*.) In support of its argument that the claims brought under 47 U.S.C. § 605 and 553 should be dismissed, La Frontera relies on *J&J Sports Productions, Inc. v. Mandell Family Ventures, L.L.C*., 751 F.3d 346 (5th Cir. 2014), a Fifth Circuit case with facts and allegations similar to those asserted in the instant case. (*Id* at 3.)

La Frontera contends that in *Mandell*, a Dallas restaurant that maintained a commercial

---

[3] Citing *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007) ("finding consideration of insurance contracts unattached to the complaint permissible where they were attached to the motions to dismiss, referred to in the complaint, and central to the plaintiffs' claims"); also citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2008) ("directing courts to 'consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice'").

cable television account with a cable provider, purchased a pay-per-view fight program and displayed it during normal business hours. (*Id.*) J&J, same plaintiff as in the instant case, brought suit against the restaurant claiming it violated Sections 553 and 605. (*Id.*) La Frontera claims the Fifth Circuit held that the Section 553 claim failed because the safe harbor provision of that same section applied. (*Id.* (citing *Mandell*, 751 F.3d at 348.)) Applying the *Mandell* holding to the instant case, La Frontera argues that it falls within the safe harbor provision and therefore cannot be held liable under Section 553 because it was a commercial account holder with Cox and purchased the program via pay-per-view like the *Mandell* defendant. (*Id.*)

Furthermore, La Frontera claims the Fifth Circuit held Section 605 did not apply to a restaurant's receipt of communications by wire from their cable provider's cable system, concluding that Section 605 merely applies to satellite and radio transmissions and interception of the same. (*Id.*) Therefore, La Frontera argues, it cannot be held liable under Section 605, as *Mandell* establishes that it is inapplicable to the facts of the instant case. (*Id.* at 4.)

### ii. Plaintiff J&J's opposition to La Frontera's Motion to Dismiss (Doc. 27)

In its opposition to La Frontera's motion to dismiss, J&J asserts that, for purposes of this motion, the Court can only look to the allegations contained in J&J's complaint to determine if a claim has been stated. (Doc. 27-1 at 1).[4] J&J argues "[e]xtrinsic evidence such as exhibits filed

---

[4] J&J cites to *Scanlan v. Texas A&M University*, 343 F.3d 533, 536 (5th Cir. 2003), in support of its position. J&J excluded from its supporting memorandum the portion of the Fifth Circuit's opinion in *Scanlan* recognizing an exception that allows courts to consider documents attached to a motion to dismiss as long as the documents are referred to in the plaintiff's complaint and the documents are central to the plaintiff's claim. *Scanlon*, 343 F.3d 533, 536 (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498—99 (5th Cir. 2000). Further, in contrast to J&J's argument here, the Middle District has articulated a three-prong test utilized when determining which documents outside of the complaint may be considered on a motion to dismiss for failure to state a claim: "a court may consider documents outside the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiffs' claims." *Dix v. Louisiana Health Servs. & Indem. Co.*, No. 12-319, 2013 WL 5350829, at *2 (M.D. La. Sept. 23, 2013).

by any other party may not be considered by the Court because that would be considering facts not forming a part of the complaint and would undermine the purpose of the rule." (*Id.* (citing *Scanlan v. Texas A&M University*, 343 F.3d 533, 536 (5th Cir. 2003)); *see also Khurana v. Innovative Health Care Sys., Inc*., 130 F.3d 143, 147 (5th Cir. 1997); *Capital Parks, Inc. v. Southeastern Adver. & Sales Sys., Inc*. 30 F.3d 627, 629 (5th Cir. 1994). J&J does not specifically address whether or not the exhibit attached to La Frontera's answer can be considered by the Court, but it does contend the exhibit attached to Cox's motion cannot be reviewed by the Court when considering La Frontera's motion because it is extrinsic evidence. J&J argues this factor alone is sufficient to deny La Frontera's motion. (*Id.*)

Additionally, J&J argues La Frontera did not plead the Section 553 "safe harbor" affirmative defense and thus cannot assert the defense by way of this motion. (*Id.* at 2 (citing Fed. R. Civ. Pro. 12(b)(6), (h)(2).))[5] Alternatively, if the Court decides to hear the merits of the motion, J&J asserts that the safe harbor provision and *Mandell* do not apply because Cox was not authorized to transmit the Program to La Frontera. (*Id.*)[6]

### 2. Analysis

#### i. Consideration of the Commercial Services Agreement and La Frontera's Cox Bill

As a threshold matter, the Court must determine what documents it can rely upon when considering La Frontera's motion to dismiss. The Court's decision with regards to this motion heavily depends upon the method in which the Program was transmitted to La Frontera. More specifically, if La Frontera purchased the Program from its cable service provider Cox –and therefore received the Program through cable communications– the law provides La Frontera

---

[5] La Frontera subsequently filed an amended answer pleading the Safe Harbor defense. (Doc. 33).
[6] J&J points the court to this statement located in their Complaint at paragraphs 16 and 23. (Doc. 1 at  7-9).

with a full defense against the claims J&J brings under 47 U.S.C. § 553 and 605. However, J&J's complaint fails to identify the manner in which the Program was transmitted, so the Court must apply the three prong test articulated by the Court in *Dix*, 2013 WL 5350829 at *2, to determine which documents outside of the complaint can be relied upon when considering La Frontera's motion to dismiss. As urged by J&J in its opposition, the Court will not rely upon the exhibit attached to Cox's motion to dismiss when considering La Frontera's motion to dismiss. However, the Court finds J&J's argument that this factor alone is sufficient to warrant the Court's denial of La Frontera's motion to dismiss unpersuasive.

J&J alleges La Frontera took steps to unlawfully receive its television signal transmitting the Program. (Doc. 1 at 7). The mere assertion of legal conclusions is not sufficient to survive a motion to dismiss; therefore, the assertion that La Frontera's reception of the Program was unlawful is of no consequence. (*Id*.) The specific "steps" that La Frontera took to receive the Program are central to J&J's claim and the Court's determination of whether La Frontera's reception of the Program was, in fact, unlawful. However, J&J merely listed numerous ways in which the Program *may* have been intercepted from either cable or satellite transmissions, without alleging what actually occurred in this case. (*Id.*) J&J stated, in pertinent part:

> Those steps taken probably consisted of one of the following to direct the television signal by cable transmission or satellite transmission to La Frontera's commercial establishment located at 11209 Muriel Avenue, Baton Rouge, LA 70816:
> (a) Setting up a "resident" account with either a cable television service provider for reception of the plaintiff's Program…

(*Id.*)

In its answer and third party demand, La Frontera concedes it broadcasted the Program, asserting it paid Cox to legally air the Program, attaching and incorporating by reference "'Exhibit A.'" (Doc. 7 at 7.) The referenced exhibit ("the Exhibit") contains (1) the Commercial

8

Services Agreement between Cox and La Frontera (Doc. 7-1 at 5) and; (2) La Frontera's Cox bill from the month of May 2015, displaying a usage charge of $99.99 for La Frontera's order of the Program via pay-per-view. (*Id*. at 3.)  This confirms J&J's speculation in its complaint that the Program was received via cable transmission from a cable service provider. However, the Exhibit was only attached to La Frontera's answer and third party demand, not J&J's complaint or La Frontera's motion to dismiss.

Based on these facts, the Exhibit only satisfies two of the three prongs of the *Dix* test. First, as stated above, the method in which the Program was transmitted to La Frontera is central to J&J's claim that the Program was unlawfully accessed. Second, J&J referenced the documents contained in the Exhibit by speculating as to the possibility of La Frontera having set up a cable service account in order to access the Program. The third prong of the test is not satisfied because La Frontera did not attach the Exhibit to its motion to dismiss. Therefore, La Frontera will be allowed amend its motion to dismiss to attach the Exhibit so the Court can properly consider it on its motion to dismiss and recognize that La Frontera received the Program through cable communications by paying their cable provider Cox.

### ii.  Violation of 47 U.S.C. § 605(a), (e)(3)(a) and (e)(4)

The Court finds La Frontera's argument in support of dismissal of the Section 605 claim to be well-founded. In *Mandell*, J&J (the same plaintiff as the plaintiff in the instant case) brought claims under 47 U.S.C. § 553 and 605 premised on the same facts as the instant case and failed with respect to both claims. *Mandell*, 751 F.3d 346. There, a restaurant received commercial cable services from a cable service provider and purchased the pay-per-view broadcast of J&J's boxing match through its cable provider. *Id.* at 347. The restaurant then broadcasted the fight for the public during normal business hours. *Id.* The Fifth Circuit held

Section 605 only applies to radio transmissions, not communications by wire cable system. *Id.* at

352-353.  Therefore, the court concluded it did not apply to the *Mandell* restaurant's receipt of

communications from their cable service provider because that is classified as communications

by wire. *Id. See also J & J Sports Prod., Inc. v. KCK Holdings, LLC*, No. 14-00269, 2015 WL

7195770, at *3 (M.D. La. Nov. 16, 2015) (Jackson, C.J.).

The Fifth Circuit reasoned the plain language of the statute compels this interpretation. *Id.*

Section 605 provides in pertinent part:

> No person having received any intercepted *radio communication* or having
> become acquainted with the contents, substance, purport, effect, or meaning of
> such communication (or any part thereof) knowing that such communication
> was intercepted, shall divulge or publish the existence, contents, substance,
> purport, effect, or meaning of such communication (or any part thereof) or use
> such communication (or any information therein contained) for his own benefit
> or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a) (emphasis added). Congress defined *radio communications* as, "the

transmission by radio of [communications] of all kinds, including all instrumentalities, facilities,

apparatus, and services ... incidental to such transmission." *Mandell*, 751 F.3d 351 (citing 47

U.S.C. § 153(40) (internal quotations omitted).) "Communication[s] by wire" was is defined in

Section 153(59) as, "the transmission of [communications] of all kinds by aid of wire, cable, or

other like connection between the points of origin and reception of such transmission, including

all instrumentalities, facilities, apparatus, and services (among other things, the receipt,

forwarding, and delivery of communications) incidental to such transmission." *Id.* at 352 (citing

47 U.S.C. § 153(59) (internal quotations omitted)). The Fifth Circuit reasoned, "given that

Congress clearly defined both radio and wire communications, it presumably would have

included the word 'wire' in the applicable sentences of §605 if it intended for them to apply to

the communications [transferred by cable]." *Id.*

10

Applying the Fifth Circuit's holding here, the Court finds J&J's claim against La Frontera under Section 605 must fail because the Program was transferred to La Frontera via wire communication, not radio communication. Therefore, La Frontera's motion seeking dismissal of J&J's claim under Section 605 is granted, subject to La Frontera amending its motion to dismiss, thereby attaching the Exhibit.

### iii.   Violation of 47 U.S.C. §553

J&J alleges La Frontera also violated Section 553, which imposes civil and criminal liability for intercepting or receiving or assisting in intercepting or receiving any communications service offered over a cable system. 47 U.S.C. § 553(a)(1). However, as pointed out by La Frontera, the statute provides a critical exception: "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, *unless specifically authorized to do so by a cable operator* or as may otherwise be specifically authorized by law." *Id*. (emphasis added.) In *Mandell*, the Fifth Circuit explained this provision is often referred to as a "safe harbor" that "precludes the imposition of liability on the majority of cable recipients—customers of cable providers." *Mandell*, 751 F.3d at 348. "This exclusion constrains the reach of the statute by exempting from liability those individuals who receive authorization from a cable operator…" *Id*. In support of its motion to dismiss the Section 553 claim, La Frontera relies on a safe harbor provision contained in the statute and the *Mandell* decision. (Doc. 25-1 at 3-4.)

The Court finds both of J&J's arguments in opposition unavailing. With respect to J&J's first argument, its assertion that La Frontera did not plead the safe harbor defense in its first answer is correct. (Doc. 7.) However, the Court subsequently granted La Frontera leave of court to amend its' answer (Doc. 31-1). In its amended answer, La Frontera asserts the safe harbor

defense, arguing it fell within the protection of the defense because it received the Program through cable transmission by Cox. (Doc. 33). Therefore, J&J's first argument in opposition is meritless.

The Court finds that Plaintiff J&J's second argument, that the safe harbor exception and *Mandell* do not apply here because Cox was not authorized to transmit J&J's Program to La Frontera, is also meritless. J&J's argument here is similar to the argument it made in *Mandell*, 751 F.3d 346. There, J&J argued that a cable customer who receives such authorization from their cable company may still face liability under Section 553 unless it takes the additional step of ensuring that the cable operator itself is licensed to distribute the various broadcasts that the customer views. *Id* at 348. The Fifth Circuit reasoned J&J's highly restrictive interpretation of the safe harbor provision has no support in the text of the statute, explaining:

> The statute does not hinge liability on the cable customer taking additional steps or the cable operator being licensed to distribute a broadcast: The exclusion from liability simply applies to those who receive authorization from a cable operator… Moreover, applying the safe-harbor provision in the manner J&J advocates would expand liability under the statute to ends not encompassed by the text, holding liable cable customers who unknowingly receive broadcasts that the cable company was not licensed to distribute, even though they were authorized by the cable operator to receive the broadcast.

*Id*. at 349.

Applying the Fifth Circuit's reasoning in *Mandell*, J&J is misinterpreting the statute yet again. It is irrelevant whether Cox had authorization from J&J to transmit the Program to La Frontera. As long as La Frontera was authorized by Cox to receive the Program, J&J's claims under Section 553 fail because La Frontera is protected under the safe harbor provision. As evidenced by the Exhibit, La Frontera had a commercial cable account with Cox and paid Cox for the Program via pay-per-view. Therefore, La Frontera accessed the Program with

authorization from its cable service provider like the *Mandell* defendant. Thus, with respect to the Section 553 claim, La Frontera's motion to dismiss is granted, subject to La Frontera amending its motion to dismiss, to attach the Exhibit.

### iv.   Violation of 18 U.S.C. § 2511 and 2520

La Frontera appears to move to dismiss all claims asserted against it, including the claim made under Sections 2511 and 2520, however, it provides no argument in support for dismissal of this claim. (Doc. 25-1 at 3-4). Pertinent to this claim is J&J's allegations that it had exclusive rights to the commercial distribution and broadcast of the Program and that La Frontera was not granted sub-licensing rights to publically exhibit the Program. (Doc. 1 at 9-10). Also pertinent is J&J's allegation that La Frontera intercepted, broadcasted, or received the Program with full knowledge that it was not authorized to do so. (*Id.* at 10.)

Section 2511 (the criminal wiretap statute) prohibits intentionally intercepting, endeavoring to intercept or procuring anyone to intercept or endeavor to intercept any wire, oral or electronic communications. 18 U.S.C. § 2511. A civil right of action is conferred upon private individuals in Section 2520(a): "[A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate." Proof of a violation of § 2511 requires proof of an intentional, illegal interception. *J & J Sports Prod., Inc. v. KCK Holdings, LLC*, 14-269, 2015 WL 7195770, at *3 (M.D. La. Nov. 16, 2015) (citing *DirecTV, Inc. v. Robson*, 420 F.3d 532, 537 (5th Cir. 2006).) Therefore, in order for this claim to withstand this motion to dismiss, the facts must raise a reasonable expectation that discovery will reveal evidence that La Frontera intentionally intercepted and unlawfully appropriated the Program. *Robson*, 420 F.3d at 537.

13

In a similar case brought before this Court, J&J initiated a lawsuit against a bar and its owners, asserting defendant violated 18 U.S.C. § 2511 and 2520 when it broadcasted one of J&J's programs without obtaining the proper licensing rights from J&J. *See KCK Holdings, LLC*, 2015 WL 7195770, at *1.[7] There, the defendant received J&J's program by way of cable transmissions, like La Frontera did in the instant matter. *Id.* The defendant KCK Holdings argued J&J's claim brought under 18 U.S.C. § 2511 and 2520 should be dismissed because he received J&J's program through cable transmissions, not an external device or physical intrusion into a cable network. *Id* at *3. In contrast, J&J suggested an interception can occur by way of a "purposeful misrepresentation of a commercial establishment as a residential property to allow the fraudulent purchase of a [program] at the residential rate." *Id.* The Court found the defendant's argument unpersuasive because it failed to cite any authority for the proposition that a violation of Section 2511 requires evidence of the use of an external device or a physical intrusion into a cable network. *KCK Holdings*, 2015 WL 7195770, at *3 ("'although it is true that many § 2511 cases involve pirate access devices, this Court is not aware of any binding authority articulating the need for evidence of such a device'") (quoting *J & J Sports Prods., Inc. v. Giuseppe's Bistro, LLC*, 14-1326, 2015 WL 1540364, at *6 (E.D. La. Apr. 6, 2015).)

Like the *KCK Holdings* defendant, La Frontera accessed J&J's Program through cable transmissions without obtaining proper licensing from J&J. La Frontera fails to put forth an

---

[7] In *KCK* Holdings, J&J also brought claims against defendant under 47 U.S.C. § 553 and 605. *Id.* Consistent with the ruling in the instant case regarding the Section 605, Judge Jackson granted defendant *KCK Holdings* motion seeking dismissal of J&J's claim under Section 605 based on the Fifth Circuit's holding in *Mandell. Id.* at*3. However, Judge Jackson denied the defendant's motion to dismiss the Section 553 claim because the defendant failed to set forth evidence demonstrating that it was authorized to receive the fight from its cable provider. *Id* at*5. Judge Jackson reasoned *KCK Holdings* was distinguishable from *Mandell* because the *Mandell* defendant proved it was authorized by its cable provider to receive the program and therefore within the protection of the safe harbor provision of Section 553 by showing it paid its cable provider to receive the program. This distinguished the *KCK Holdings* defendant, who did not provide any proof of a contract with a cable provider or payment for the program. *Id.* In the instant case, it is important to note that La Frontera paid Cox for the program, and therefore it is indistinguishable from the *Mandell* defendant.

argument in support of dismissing the claim brought against it under 18 U.S.C. § 2511 and 2520. Further, the Court's independent research failed to yield any authority that suggests an external device or physical intrusion is necessary to prove a violation under the statute. Thus, J&J's allegation that La Frontera intercepted, broadcasted, or received the Program with full knowledge that it was not authorized to do so, if assumed to be true, allows the Court to reasonably infer La Frontera is liable under Sections 2511 and 2520. Accordingly, La Frontera's motion to dismiss, in this regard, is denied.

### B. Cox' Motion to Dismiss (Doc. 14)

#### 1. Parties' Arguments

La Frontera alleges all the actions it took were done at the direction of Cox, that it paid Cox to legally air the Program, and that Cox sold it a thing Cox did not own. (Id. at 6-7.) Accordingly, La Frontera brings a third party demand against Cox for damages under the following legal theories: fraud, breach of contract, negligence, and violation of the Louisiana's Unfair Trade Practice Act (LUTPA). La Frontera also claims, should judgment be rendered against it and in favor of J&J in the main demand, that it is entitled to indemnification from Cox. (Id. at 8-9.)  Cox files this 12(b)(6) motion to dismiss all claims made against it by La Frontera.

##### i. Cox's Argument in Support of its Motion to Dismiss (Doc. 14-1)

###### 1. Cox argues it cannot be held liable for indemnification based on the facts plead in La Frontera's third party demand.

In its motion, Cox first argues recent Fifth Circuit precedent confirms that there is no liability which can be imputed to Cox. (Doc. 14-1 at 3.) Next, Cox argues, notwithstanding that

there is no valid underlying claim in this matter, La Frontera's third party demand against it must fail because the Cox Services Agreement referenced in the third party demand states that La Frontera, not Cox, is responsible for public performance licenses. (*Id*. at 6.)

The basis of Cox's first argument is La Frontera's allegation in its Third Party Demand that it legally purchased the Program from Cox, its cable provider. (*Id*. at 4.) Cox asserts that if this allegation is true –which for purposes of this motion it must be considered so– then under binding Fifth Circuit precedent, J&J has no claim against La Frontera under 47 U.S.C. § 553 and 605. (*Id*. at 4-5.)[8] Cox alleges that, if La Frontera purchased the Program from Cox, La Frontera is within the safe harbor provision of Section 553, and J&J's Section 553 claim against La Frontera fails. (*Id*. at 5.) Additionally, Cox argues that J&J's Section 605 claim against La Frontera also fails as a matter of law, as it only applies to radio and satellite transmissions and not wire television broadcasts. (*Id.*) Therefore, Cox argues, no liability can be imputed to Cox for indemnification under those two claims, because J&J has no viable claims against La Frontera under Sections 553 and 605, as a matter of law. (Doc. 14-1 at 4 ("[w]hen the primary claim has been dismissed before trial, the general rule is to also dismiss the ancillary third party claim") (quoting *Joiner v. Diamond M Drilling Co.*, 677 F.2d 1035, 1042 n. 20 (5th Cir. 1982) (internal quotation marks omitted).))

As to J&J's remaining claims brought against La Frontera under 18 U.S.C. § 2511 in connection with § 2520, Cox argues alleging these claims likewise fail. (*Id*. at 6.) In support of its argument, Cox cites *Giuseppe's Bistro*, No. 2015 WL 1540364, at *6. (*Id*.) In order to prevail on a cause of action for a violation of Section 2511, Cox contends J&J must provide proof of intentional, illegal interception. (*Id*.) Cox argues, because La Frontera plead that it *legally*

---

[8] Cox relies on the same Fifth Circuit case relied upon by La Frontera in support of La Frontera's motion to dismiss and discussed in the previous subsection, *Mandell*, 751 F.3d 346.

purchased the Program from Cox, there is no intentional, *illegal* interception and therefore no liability for J&J's claims under Sections 2511 and 2510. (*Id.* 5—6 (emphasis added).)

Second, Cox argues that even if the Court finds there is a viable underlying claim against La Frontera, Cox's motion to dismiss should be granted because the Agreement attached and incorporated into La Frontera's third party demand expressly provides that Cox is not responsible for any licenses La Frontera may need in order to host a public performance of any copyrighted material, which is the exact situation here. (*Id.* at 6-7.)

In sum, Cox argues, when the allegations made by La Frontera in the third party demand are accepted as true, J&J has no viable cause of action against La Frontera, there are no damages to be imputed to Cox for indemnification and thus, the claims in La Frontera's Third Party Demand against it for indemnification should be dismissed. (*Id.* at 3-6.) Further, Cox argues it cannot be held liable because the contract between La Frontera and Cox contemplates the exact situation that occurred here, expressly providing Cox shall not be held responsible.

> **2. Cox argues La Frontera's Negligence, Breach of Contract, Fraud, and Louisiana Unfair Trade Practice Act (LUTPA) claims against Cox also fail based on the facts plead in the third party demand.**

First, in support of its request to dismiss the negligence and breach of contract claims La Frontera brings against Cox, Cox argues that La Frontera has failed to state a claim against Cox for negligence and breach of contract. Cox alleges for La Frontera to succeed on its negligence and breach of contract claims, La Frontera needs to show that Cox owed La Frontera a legal duty to ensure that La Frontera had all public performance licenses required for the Program. (*Id.* at 8 (citing *Falcone v. Touro Infirmary*, 2013-0015 (La. App. 4 Cir. 11/16/13); 129 So. 3d 641, 645

(citations omitted).))

 Cox argues the Agreement between Cox and La Frontera demonstrates that Cox did not owe a duty to prevent the harm alleged. (*Id.*) In support of this argument, Cox relies on Louisiana Civil Code article 1983, which provides that contracts have the effect of law between the parties. (*Id.*) The General Terms of the Agreement state: "the Customer, and not Cox, shall be responsible for obtaining any public performing licenses." (*Id.*) Accordingly, Cox alleges the language of the Agreement is clear that Cox did not have any obligations to ensure La Frontera had the proper licenses or authorizations to air a public performance of the Program. (*Id.*) Cox asserts it is implausible for La Frontera to pursue claims against Cox on the premise that Cox owed it a duty to ensure that it obtained all public performance licenses, and thus Cox urges this Court to dismiss the claims against it. (*Id.* at 8—9.)

 Next, in support of its' request to dismiss the fraud claim made against it, Cox argues La Frontera failed to allege fraud with the required specificity. Cox addresses the fraud claim by first setting forth the standard under Federal Rule of Civil Procedure 9(b):

> Under Fifth Circuit precedent, pleading fraud with particularity sufficient to satisfy Rule 9(b) requires the pleader to identify the 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby. In other words, Rule 9(b) requires the who, what, when, where, and how' of the alleged fraud to be laid out in the complaint.

(Doc. 14-1 at 9—10 (quoting *N. Port Firefighters Pension—Local Option Plan v. Temple-Inland, Inc.*, 936 F. Supp. 2d 722, 736—37 (N.D. Tex. 2013))(internal quotations omitted).) Cox argues La Frontera's Third Party Demand lacks the necessary specificity to sustain a fraud claim against Cox. (*Id.* at 10). Cox asserts the totality of La Frontera's allegations are: "[a]ll action taken by third party plaintiffs was done so at the direction of Cox"; "third party plaintiffs paid Cox to legally air the Program"; and "Cox sold third party plaintiffs a thing it did not own." (*Id.*;

*see also* Doc. 7 at 7.) Cox argues there are no additional factual allegations in the Third Party

Demand. (*Id.*) Additionally, Cox asserts La Frontera does not identify a person, place, or time of

any particular misrepresentation nor does it make an attempt to identify or describe what benefit

Cox or any Cox representative would gain by making a misrepresentation. (*Id.*) Cox argues La

Frontera's demand only includes conclusions without any factual allegations. *Id.* Cox urges the

Court to dismiss La Frontera's claims because it falls short of the requirements of Rule 9(b). (*Id.*

at 10—11.)

Finally, Cox argues La Frontera failed to assert the requisite elements of a LUTPA claim.

(*Id.* at 11.) LUTPA "declares that it is unlawful to engage in 'unfair methods of competition and

unfair or deceptive acts or practices in the conduct of any trade or commerce.'" (*Id.* (quoting La.

Rev. Stat. 51:1405(A).)) Cox alleges other sections of this Court have recognized that LUTPA

"protects consumers and business competitions only, and the real purpose of the LUTPA is to

deter injury to competition," and, "'[w]here the plaintiffs are not in competition with the

defendants, it appears that most courts treat the claim as a breach of contract claim, which is not

actionable under the LUTPA.'" (*Id.* (quoting *Landreneau v. Fleet Fin. Grp.,* 197 F. Supp. 2d

551, 557 (M.D. La. 2002).)) Accordingly, Cox argues that because La Frontera and Cox are not

competitors, a LUTPA claim is not appropriate. (*Id.*) Cox asserts La Frontera makes no factual

statements that relate to LUTPA and only includes LUTPA in a list of negligent acts with no

explanation. (*Id.*) Cox urges the Court to dismiss any claim La Frontera brings or intends to bring

under LUTPA. (*Id.* at 12.)

### ii.  J&J's opposition to Cox's Motion to Dismiss (Doc. 20)

J&J argues the Court can only look to allegations in the third party demand to determine if a claim has been stated, and, therefore, the exhibit attached to Cox's motion cannot be reviewed by the Court when deciding this motion. (Doc. 20-1 at 1.)[9]

### iii.   La Frontera's opposition to Cox's Motion to Dismiss (Doc. 24)

La Frontera opposes Cox's motion to dismiss, arguing the Motion is premature because the Court has not yet ruled whether or not the J&J has a claim against it under the claims brought in the main demand. (Doc. 24 at 2.)

### iv.   Cox's Reply in Support of its Motion to Dismiss (Doc. 29)

Cox filed a reply addressing both oppositions to its motion. (Doc. 29.) In response to J&J's opposition, Cox contends that J&J is incorrect about the propriety of Cox's reliance on the contract between Cox and La Frontera. (Doc. 29-1 at 3.) Cox relies on Fifth Circuit precedent holding that a court is permitted to consider contracts when they are referred to in the complaint and attached to the motion to dismiss, and where they are central to the plaintiff's claims. (*Id.* (citing *In re Katrina Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007))); s*ee also Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). Cox points out, in La Frontera's third party demand, La Frontera alleges that Cox breached the contract between them. (Doc. 29-1 at 3.)[10] Cox argues that, by referencing the contract and attaching it to the third party demand, La Frontera made it a central part of La Frontera's claim against Cox, and therefore Cox is entitled to rely on the contract. (*Id.*)

In response, Cox argues its motion is not premature because it is properly based on factual allegations in La Frontera's third party demand against it, which demonstrate that Cox cannot be liable. (*Id.* at 4.) Further, Cox points out that La Frontera neglects to mention or

---

[9] *Supra,* n. 4.
[10] *See* Doc. 7 at 7.

provide legal support for its opposition to Cox's other arguments for dismissal. (*Id.*) Cox asserts it raised independently sufficient grounds to warrant dismissal of the third party claims against it based on the contract between it and La Frontera, the lack of an owed duty, and La Frontera's failure to plead fraud with the required specificity. (*Id.*) Cox argues La Frontera's failure to brief these issues constitutes a waiver. (*Id.* at 4—5 (plaintiff's "failure to brief issue waives any argument he might have in opposition to [defendant's arguments]") (citing *Jones v. Jefferson Par.*, 12-2191, 2013 WL 871539, at *3 (E.D. La. Mar. 8, 2013); ("[D]istrict courts have considered arguments waived where the plaintiffs fail to address an issue in response or in opposition to a pending motion.") (citing *McZeal v. J.P. Morgan Chase Bank, NA*, 13-6754, 2014 WL 3166715, at *8 (E.D. La. July 7, 2014)).)

### 2. Analysis

Again, at the outset of the Court's analysis it must determine what documents it can rely upon when considering Cox's motion to dismiss. In support of its motion to dismiss, Cox relies on La Frontera's allegations in La Frontera's third party demand and the Exhibit incorporated and attached to it. The Commercial Services Agreement contained in the Exhibit binds the customer to certain "General Terms" that are not contained in the document itself, stating, in relevant part, "[t]his Agreement binds Customer to… the General Terms located at http://ww2.cox.com/aboutus/policies/business-general-terms.cox... Customer acknowledges receipt and acceptance of the AUP and the General Terms by signing this Agreement." (*Id.*) Accordingly, Cox attached the binding General Terms that are referenced but not contained in the Agreement to its motion to dismiss.

In considering Cox's motion to dismiss, the Court properly relies on the General Terms attached to and referenced in Cox's motion to dismiss, as it satisfies all three prongs of the *Dix*

test: (1) Cox attached the General Terms to its motion; (2) the General Terms are incorporated into La Frontera's third party demand because they are referenced in and binding to the Agreement attached to La Frontera's third party demand and; (3) the General Terms are intrinsically central to La Frontera's claims against Cox, particularly the breach of contract claim, because they are binding terms of the contract executed between the parties and attached to the third party demand. *Dix*, 2013 WL 5350829 at *2.

### 1. Fraud claim

The Court finds persuasive Cox's argument that La Frontera's fraud claim against it must fail because it failed to allege fraud with the required specificity. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Fifth Circuit "interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002).

There are only three factual allegations contained in La Frontera's third party demand that support its fraud claim. First, La Frontera alleges all actions taken by it were done at the direction of Cox. (Doc. 7 at 7.) Further, La Frontera alleges it paid Cox to legally air the Program, incorporating by reference the Commercial Services Agreement ("the Agreement") executed between the parties. (*Id.*) Lastly, it alleges Cox sold La Frontera a thing it did not own. (*Id.*) Accordingly, La Frontera does not meet the Fifth Circuit's strict interpretation of the Rule 9(b) pleading standard. For these reasons, the Court concludes La Frontera failed to state a claim for which relief can be granted and dismisses La Frontera's fraud claim brought against Cox.

### 2.Indemnification, Breach of Contract, Negligence, and LUTPA claims

Based on the Agreement between Cox and La Frontera, the Court finds Cox cannot be held liable to La Frontera under the remaining claims for indemnification, breach of contract, negligence and LUTPA for the following reasons.

The Agreement states, in pertinent part:

> This Agreement binds Customer to the terms and conditions attached to this Agreement and any other terms and conditions applicable to Services selected above, including without limitation, the Cox tariffs, Service Guides, state and federal regulations, the General Terms located at http://ww2.cox.com/aboutus/policies/business-general-terms.cox, and the Cox Acceptable Use Policy (the "AUP"). Customer acknowledges receipt and acceptance of the AUP and the General Terms by signing this Agreement.

(Doc. 7-1 at 5.) The referenced General Terms in effect at the time stated:"[i]f Customer engages in a public performance of any copyrighted material contained in any of the video or music Services provided under this Agreement, the Customer, and not Cox, shall be responsible for obtaining any public performing licenses." (Doc. 14-2 at 6.)[11]

It is well-settled that "[c]ontracts have the effect of law for the parties" and the "[i]nterpretation of a contract is the determination of the common intent of the parties" in Louisiana. *Lobell v. Rosenberg*, 2015-0247 (La. 10/14/15), 186 So.3d 83, 88—89 (quoting La. Civ. Code arts. 1983 and 2045) (internal quotations omitted.) "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. Thus, common intent is determined "in accordance with the general, ordinary, plain and popular meaning of the words used in the contract." *Rosenberg*, 186 So.3d at 89. "When a clause in a contract is clear and unambiguous,

---

[11]The General Terms are not included in the exhibit attached to La Frontera's third party demand. However, they are included in the exhibit attached to Cox's motion to dismiss. Again, because the document is referenced in and attached to La Frontera's answer and third party demand, is central to La Frontera's claim, and is attached to Cox's motion to dismiss, the Court may consider it when deciding this motion.

the letter of that clause should not be disregarded… as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties." *Id.*

The Agreement contemplates the situation at issue here, as articulated by Cox: "La Frontera purchased the right to access the Program from Cox, and then engaged in a public performance of same, without requesting or otherwise receiving the necessary public performance license to do so from J&J." (Doc. 14-1 at 7.) The Agreement's language is clear and unambiguously provides that it is La Frontera's responsibility to secure any necessary public performing licenses. Therefore, Cox cannot be held liable for breach of contract because it did not have the duty to ensure La Frontera obtained the proper license from J&J. Further, considering the Agreement has the effect of law between Cox and La Frontera, it follows that, if La Frontera is liable under the main demand for its failure to secure proper licensing from J&J, Cox should not be held liable for indemnification.

La Frontera's negligence claim against Cox also is without merit. To prevail on a negligence claim in Louisiana, plaintiff must prove the defendant had a duty to conform his conduct to a specific standard (the duty element). *Patrick v. Poisso*, 38,841 (La. App. 2 Cir. 9/22/04, 9), 882 So. 2d 686, 692 (citing *Roberts v. Benoit*, 605 So. 2d 1032 (La. 1991).) Under Louisiana law, the existence of a duty and its scope are questions of law. *Gross v. Exxon Corp.*, 885 F. Supp. 899, 903 (M.D. La.1994). Because the Agreement states La Frontera has the responsibility to secure any necessary public performance licenses, the Court finds Cox did not have a duty to ensure that La Frontera obtained the public performance license required for its public broadcasting of the Program. The Agreement provided it was La Frontera's responsibility

to obtain the license from J&J. For these reasons, the Court concludes La Frontera's negligence claim against Cox fails as a matter of law.

La Frontera further alleges Cox's conduct violated the LUTPA. La. Rev. Stat. Ann. § 51:1405 *et seq.* LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. Ann. § 51:1405(A). "Because of the broad sweep of this language, Louisiana courts determine what a LUTPA violation is on a case-by-case basis." *Quality Envtl. Processes, Inc. v. I.P. Petroleum Co., Inc.*, 13-1582 (La. 5/7/14, 21), 144 So. 3d 1011, 1025. The Louisiana Supreme Court has consistently held that, in establishing a LUTPA claim, plaintiff must show that "the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Id.* Further, "the range of prohibited practices under LUTPA is extremely narrow, as LUTPA prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence." *Id.*

As provided in the analysis above, Cox's alleged actions here do not even rise to the level of "mere negligence" because it did not have a duty to ensure La Frontera obtained the proper license for the Program from J&J. This reason alone is sufficient to support the Court's conclusion that La Frontera's claim under LUTPA also fails.

Accordingly, Cox's motion to dismiss is **GRANTED**.

## IV.    Conclusion

For the reasons stated above,

**IT IS ORDERED** that *Defendant La Frontera's Motion to Dismiss Pursuant to Rule 12(b)(6)* (Doc. 25) is **GRANTED IN PART and DENIED IN PART**.  La Frontera's motion to dismiss is **DENIED** with respect to Plaintiff's claim brought under the Wiretap Act, 18 U.S.C. §

2511 and 2520.  La Frontera's motion to dismiss is **GRANTED** with respect to Plaintiff's claims brought under 47 U.S.C. § 605 and 553, subject to La Frontera amending its motion to dismiss, thereby attaching the Exhibit, within 7 days of the issuance of this ruling.

      **IT IS FURTHER ORDERED** that *Third Party Defendant, Cox Communications Louisiana LLC's ("Cox") Motion to Dismiss Pursuant to Rule 12(b)(6)* is **GRANTED**. All claims made against Cox in this action are hereby **DISMISSED WITH PREJUDICE**.

      Signed in Baton Rouge, Louisiana, on <u>July 24, 2017</u>.

                            _____

                            **JUDGE JOHN W. deGRAVELLES**
                            **UNITED STATES DISTRICT COURT**
                            **MIDDLE DISTRICT OF LOUISIANA**